# EXHIBIT A

FILED DATE: 12/19/2018 5:00 PM 2018CH15728

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CHARLENE FIGUEROA, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TONY'S FINER FOODS ENTERPRISES, INC., TONY'S FINER FOODS NO. 6, INC., and TONY'S FINER FOODS NO. 9 INC., d/b/a TONY'S FRESH MARKET, a/k/a SUPER TONY'S FINER FOODS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.  **2018CH15728**

**JURY TRIAL DEMANDED**

FILED
12/19/2018 5:00 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15728

## CLASS ACTION COMPLAINT

Plaintiff Charlene Figueroa ("Figueroa" or "Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Tony's Finer Foods Enterprises, Inc., Tony's Finer Foods No. 6, Inc., and Tony's Finer Foods No. 9 Inc., d/b/a Tony's Fresh Market a/k/a Super Tony's Finer Foods, (Collectively "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## NATURE OF THE ACTION

1.      Defendant Tony's Finer Foods Enterprises, Inc. is a grocery retailer that provides and distributes food products in grocery stores within the state of Illinois.

2.       Defendant Tony's Finer Foods No. 6, Inc. is a grocery retailer that provides and distributes food products in grocery stores within the state of Illinois.

3.      Defendant Tony's Finer Foods No. 9, Inc. is a grocery retailer that provides and distributes food products in grocery stores within the state of Illinois.

4.      Defendants collectively do business as "Tony's Fresh Market" and are also known as "Super Tony's Finer Foods."

5.      When Defendants hire an employee, he or she is enrolled in their Kronos employee database using a scan of his or her fingerprint. Defendants use the Kronos employee database to monitor the time worked by their hourly employees.

6.      While many employers use conventional methods for time tracking (such as ID badge or punch clocks), Defendants' employees are required to have their fingerprints scanned by a biometric timekeeping device.

7.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

8.      Unlike ID badges or time cards– which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Defendant's employees to serious and irreversible privacy

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Google+, Equifax, Uber, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

9.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

10.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

11.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

12. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, store and use Illinois citizens' biometrics, such as fingerprints.

13. Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard their employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use employees' biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because they did not and continue not to:

    a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, disseminated and used, as required by BIPA;

    b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and,

    c. Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprints, as required by BIPA.

14. Plaintiff and other similarly-situated individuals are aggrieved because they were not: (1) informed in writing of the purpose and length of time for which their fingerprints were being collected, stored, disseminated and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provided (nor did they execute) a written release, as required by BIPA.

15. Upon information and belief, Defendants improperly disclose their employees' fingerprint data to at least one third-party, Kronos, and likely others.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

16.     Upon information and belief, Defendants improperly disclosed their employees' fingerprint data to other, currently unknown, third parties, including, but not limited to third parties that host biometric data in their data center(s).

17.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy their biometric data as required by BIPA.

18.     Plaintiff and others similarly situated are aggrieved by each Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interactions with the company.

19.     Plaintiff and others similarly situated have suffered an injury in fact based on each Defendant's improper disclosures of their biometric data to third parties.

20.     Plaintiff and others similarly situated have suffered an injury in fact based on each Defendant's violations of their legal rights.

21.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties. The Illinois Attorney General has just ranked identity theft as the top scam targeting Illinois residents. (*See, e.g.*, Exhibit A).

22.     Employees have a proprietary right to control their biometric information. In failing to comply with the requirements of BIPA, employers intentionally interfere with each employee's right of possession and control over their valuable, unique, and permanent biometric data.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

23.     Each Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

24.     Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that each Defendant's conduct violates BIPA; (2) requiring each Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

25.     Plaintiff Charlene Figueroa is a natural person and a citizen in the State of Illinois.

26.     Defendant Tony's Finer Foods Enterprises, Inc. is an Illinois corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

27.     Tony's Fresh Market No. 6., Inc. is an Illinois corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

28.     Tony's Fresh Market No. 9., Inc. is an Illinois corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

30.     Venue is proper in Cook County because Defendants are authorized to conduct business in this State, Defendants conduct business transactions in Cook County, and Defendants committed the statutory violations alleged herein in Cook County and throughout Illinois.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

31.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

32.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy.  The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens.  The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

33.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

34.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations.  740 ILCS 14/20.

35.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

  a. Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

  b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

  c. Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

36.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment."  740 ILCS 14/10.

37.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

38.　BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

39.　BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

40.　The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

41.　BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

42.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

43.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

44.     However, Defendants failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, each Defendant continues to collect, store, use, and disseminate Defendants' employees' biometric data in violation of BIPA.

45.     Specifically, when employees are hired by Defendants, they are required to have their fingerprints scanned to enroll them in their Kronos employee database(s).

46.     Defendants use and have used employee software supplied by Kronos that requires employees to use their fingerprint as a means of authentication. Per the company's policy, all of Defendants' hourly employees are required to use their fingerprints to clock-in and clock-out, both for lunch and attendance.

47.     Upon information and belief, Defendants failed and continue to fail to inform their employees that they disclose or disclosed employees' fingerprint data to at least one third party: Kronos, and likely others; fail to inform their employees that they disclose employees' fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fail to inform their employees of the purposes and

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

duration for which they collect their sensitive biometric data; and fail to obtain written releases from employees before collecting their fingerprints.

48.    Upon information and belief, Defendants fail to inform their employees that they disclose employees' fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fail to inform employees of the purposes and duration for which they collect employees' sensitive biometric data; and fail to obtain written releases from their employees before collecting their fingerprints.

49.    Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

50.    The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Each Defendant disregards these obligations and their employees' statutory rights and instead unlawfully collect, store, use, and disseminate employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

51.    Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals'

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

52.     Defendants' employees are not told what might happen to their biometric data if and when any Defendant merges with another company or worse, if and when any Defendant's business folds, or when the other third parties that have received their biometric data businesses fold.

53.     Since Defendants neither publish BIPA-mandated data retention policies nor disclose the purposes for their collection of biometric data, Tony's Fresh Market, Tony's Fresh Market No. 6, and Tony's Fresh Market No. 9 employees have no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and other similarly situated individuals are not told to whom any Defendant currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

54.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

55.     By and through the actions detailed above, Defendants disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

## III.    Plaintiff Charlene Figueroa's Experience

56.     Plaintiff Charlene Figueroa was hired by Defendants on March 8, 2017 and was an hourly employee until September 17, 2018.

57.     As a condition of employment, Figueroa was required to scan her fingerprints so Defendants could use it as an authentication method to track her time.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

58.     Defendants subsequently stored Figueroa's fingerprint data in their Kronos employee database(s).

59.     Figueroa was required to scan her fingerprint each time she clocked in for work and clocked out of work.

60.     Figueroa was also required to scan her fingerprint each time she clocked in for lunch and clocked out for lunch.

61.     Figueroa has never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used, and/or disseminated her biometric data.

62.     Figueroa has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed whether any Defendant will ever permanently delete her biometric data.

63.     Figueroa has never been provided with nor ever signed a written release allowing any Defendant to collect, store, use or disseminate her biometric data.

64.     Figueroa has continuously and repeatedly been exposed to the risks and harmful conditions created by each Defendant's violations of BIPA alleged herein.

65.     No amount of time or money can compensate Figueroa if her biometric data is compromised by the lax procedures through which each Defendant captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Figueroa would not have provided her biometric data to any Defendant if she had known that they would retain such information for an indefinite period of time without her consent.

66.     A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Figueroa has been aggrieved because she suffered an injury-in-fact

FILED DATE: 12/19/2018 5:00 PM  2018CH15728

based on each Defendant's violations of her legal rights. Defendants intentionally interfered with Figueroa's right to possess and control her own sensitive biometric data. Additionally, Figueroa suffered an invasion of a legally protected interest when each Defendant secured her personal and private biometric data at a time when it had no right to do so, a gross invasion of her right to privacy. BIPA protects employees like Figueroa from this precise conduct. Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

67.     Figueroa's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Figueroa was not sufficiently compensated by any Defendant for their retention and use of her and other similarly-situated employees' biometric data. Figueroa would not have agreed to work for Defendants for the compensation she received if she had known that Defendants would retain her biometric data indefinitely.

68.     Figueroa also suffered an informational injury because each Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created a right: an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data; and an injury – not receiving this extremely critical information.

69.     Figueroa also suffered an injury in fact because each Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties, including but not limited to Kronos, and any other third party that hosted the biometric data in their data centers, in violation of BIPA.

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

70.     Pursuant to 740 ILCS 14/15(b), Figueroa was entitled to receive certain information prior to Defendants securing her biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which each Defendant to collect, store, use and disseminate her private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store, use, and disseminate her private biometric data. By depriving Figueroa of this information, Defendants injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

71.     Finally, as a result of each Defendant's conduct, Figueroa has experienced personal injury in the form of mental anguish. For example, Figueroa experiences mental anguish and injury when contemplating what would happen to her biometric data if any Defendant went bankrupt, whether any Defendant will ever delete her biometric information, and whether (and to whom) any Defendant would share her biometric information.

72.     Figueroa has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; in the form of interference with her right to control and possess her confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

73.     As Figueroa is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendants.

## CLASS ALLEGATIONS

74.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

75.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

76.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801 for the following class of similarly-situated employees under BIPA:

> All individuals working for Tony's Finer Foods Enterprises, Inc., Tony's Finer Foods No. 6, Inc., and/or Tony's Finer Foods No. 9 Inc., in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

77.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

    A.    The class is so numerous that joinder of all members is impracticable;

    B.    There are questions of law or fact that are common to the class;

    C.    The claims of the Plaintiff are typical of the claims of the class; and,

    D.    The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

78.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendants' payroll records.

### Commonality

79.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

    A.    Whether any Defendant collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

    B.    Whether any Defendant properly informed Plaintiff of their purposes for collecting, using, and storing her biometric identifiers or biometric information;

    C.    Whether any Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

    D.    Whether any Defendant has disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

    E.    Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

F.      Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.      Whether any Defendant complies with any such written policy (if one exists);

H.      Whether any Defendant used Plaintiff's fingerprints to identify her;

I.      Whether any Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.      Whether the violations of BIPA were committed negligently; and

K.      Whether the violations of BIPA were committed willfully.

80.     Plaintiff anticipates that Defendants will raise defenses that are common to the class.

## Adequacy

81.     Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

82.     The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

83.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

## **Predominance and Superiority**

84.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

85.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action.  Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

86.　　Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.　　BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

88.　　BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

89.　　Furthermore, BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

90.　　Each Defendant fails to comply with these BIPA mandates.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

91.     Defendant Tony's Fresh Market is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

92.     Defendant Tony's Fresh Market No. 6 is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

93.     Defendant Tony's Fresh Market No. 9 is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

94.     Plaintiff is an individual who had her "biometric identifiers" collected by each Defendant (in the form of her fingerprints), as explained in detail in Sections II and III, *supra*.  *See* 740 ILCS 14/10.

95.     Plaintiff's biometric identifiers were used to identify her and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

96.     Each Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

97.     Upon information and belief, Defendants systematically disclosed Plaintiff's biometric identifiers and biometric information to at least one third party, Kronos.

98.     Upon information and belief, each Defendant systematically disclosed Plaintiff's biometric identifiers and biometric information to other, currently unknown, third parties, which hosted the biometric data in their data centers.

99.     No Defendant informed Plaintiff in writing that her biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did

FILED DATE: 12/19/2018 5:00 PM 2018CH15728

any Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

100. No Defendant provides a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

101. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

102. Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

103. These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

104. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence
**(On Behalf of Plaintiff and the Class)**

105.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106.     Each Defendant owed Plaintiff and the Class a duty of reasonable care.  Such duty required Defendants to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

107.     Additionally, Defendants owed Plaintiff and the Class a heightened duty – under which they assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

108.     Each Defendant breached its duties by failing to implement a BIPA-compliant biometric authentication system with reasonable data security safeguards.

109.     Specifically, each Defendant breached its duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length of time for which their fingerprints were being collected, stored, used, and disseminated.

110.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

111.     Upon information and belief, each Defendant breached its duties because it lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with either company.

112.    Upon information and belief, Defendants breached their duties because they systematically disclosed Plaintiff's biometric identifiers and biometric information to at least one third party: Kronos.

113.    Upon information and belief, each Defendant breached its duties because they systematically disclosed Plaintiff's biometric identifiers and biometric information to other, currently unknown, third parties, which hosted the biometric data in their data centers.

114.    These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

115.    As a direct and proximate cause of each Defendant's negligent misrepresentations, Plaintiff and the other Class members have suffered from diminution in the unique identifying value of their biometric information caused by Defendants' repeated dissemination and exposure of such information to third-parties, including Kronos, and data storage vendors, among others.

116.    Defendants knew or should have known that their breaches would cause Plaintiff and the other Class members to experience the foreseeable harms associated with the exposure of their biometrics to third parties, including the discontinuation of Plaintiff's and the Class member's exclusive possession and control of their biometrics and the accompanying loss of the unique identifying value of their biometrics.

117.    Further, each Defendant's breach of its duty proximately caused and continues to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

118. Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Charlene Figueroa respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Charlene Figueroa as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that Defendants' actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that Defendants' actions, as set forth above, constitute negligence;

E.  Declaring that Defendants' actions, as set forth above, were willful;

F.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

G.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I.  Provide such further relief as the Court deems just and equitable.

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Date: December 19, 2018                    Respectfully Submitted,

                                           _/s/ James B. Zouras_
                                           James B. Zouras
                                           Andrew C. Ficzko
                                           Haley R. Jenkins
                                           **STEPHAN ZOURAS, LLP**
                                           100 N. Riverside Plaza
                                           Suite 2150
                                           Chicago, Illinois 60606
                                           312.233.1550
                                           312.233.1560 _f_
                                           Firm ID: 43734
                                           jzouras@stephanzouras.com
                                           aficzko@stephanzouras.com
                                           hjenkins@stephanzouras.com

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on December 19, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ James B. Zouras*

FILED
12/19/2018 5:00 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15728

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

# Exhibit A

FILED DATE: 12/19/2018 5:00 PM   2018CH15728





Not Just Security, the Right
Security.

# Data Breach QuickView Report

### Data Breach Trends - First Six Months of 2017

### Sponsored by:
### Risk Based Security

### Issued in July 2017

## Mega breaches continue while pace of disclosure shows signs of slowing

- There were 2,227 breaches reported in the first half of 2017, exposing over **6 billion** records.
- Top 10 breaches exposed 5.6 billion of the 6 billion records compromised.
- Top 10 Severity scores averaged 9.82 out of 10.0.
- The Business sector accounted for 56.5% of reported breaches, followed by Unknown (17%), Government (9.1%), Medical (9%), and Education (8.4%).
- The Business sector accounted for 93% of the total records exposed, followed by Government and Unknown (approximately 3% for each). Medical and Education sectors combined accounted for less than 1% of the total records exposed year to date.
- Web (inadvertent online disclosure) continues to be the leading cause of records compromised in 2017, accounting for 68.3% of records exposed, but only 7.1% of incidents reported so far this year.
- 41.6% of reported breaches were the result of Hacking, yet accounted for 30.6% of the exposed records.
- Breaches involving U.S. entities accounted for 61% of the breaches and approximately 30% of the exposed records.
- 29.3% of the breaches exposed between one and 1,000 records, 43.6% of breaches exposed between one and 10,000 records – virtually unchanged from Q12017.
- 121 breaches, or 5.4%, affected Third Parties.
- Fifty (50) breaches - 19 in Q2 and 31 in Q1 - exposed one million or more records.
- Four 2017 breaches are now on the Top 10 List of All Time Largest Breaches.
- The company DU Called, replaced River City Media for the top spot of the single largest breach disclosed, impacting 2 billion records.

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Table of Contents

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

Mid-Year 2017 Compared to Mid-Year of the Previous Four Years ..........................................3

Mid-Year 2017 by Industry, by Month ..............................................................................3

Mid-Year 2017 Analysis by Breach Type ...........................................................................4

Mid-Year 2017 Data Breach Analysis by Threat Vector ......................................................5

Mid-Year 2017 Exposed Records by Threat Vector .............................................................5

Mid-Year 2017 Analysis by Data Family ............................................................................6

Mid-Year 2017 Confidentiality Impact .............................................................................6

Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years ...............................7

Mid-Year 2017 Analysis of Records per Breach ..................................................................8

Mid-Year 2017 Breach Types/Records Exposed – Top 5 ......................................................8

Distribtuion of Business Groups Within Economic Sectors – Top 3 .......................................9

Mid-Year 2017 Analysis by Country .................................................................................9

Mid-Year 2017 Analysis by Country – Top 10...................................................................10

Mid-Year 2017 Exposed Records by Country ....................................................................10

Mid-Year 2017 Distribution of Breaches By State .............................................................11

Mid-Year 2017 Analysis of US State Rankings- Exposed Records ........................................11

Mid-Year 2017 Breaches Involving Third Parties ..............................................................12

Mid-Year 2017 – Breach Severity Scores & Scoring...........................................................13

Mid-Year 2017 – Breach Severity Scores – Top 10 ............................................................13

Top 20 Largest Breaches All Time (Exposed Records Count) ..............................................14

Methodology & Terms ..................................................................................................17

     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Compared to Mid-Year of the Previous Four Years



## Mid-Year 2017 by Industry, by Month





    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Mid-Year 2017 Analysis by Breach Type

FILED DATE: 12/19/2018 5:00 PM  2018CH15728

### Top 10 Breach Types – First 6 Months



The number of phishing incidents started to decline once the U.S. tax season came to a close.

Despite being the leading cause of records exposed, Web (inadvertent online disclosure) ranked fifth on number of incidents.

### Top 5 Breach Types by Records Exposed First 6 Months



While not making the top 5 list very often, a Stolen Computer from the COMELEC (Philippines Election Commission) offices resulted in 55.1 million voter records exposed.

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

## Mid-Year 2017 Data Breach Analysis by Threat Vector



**Number of Incidents by Threat Vector**

16.0% of incidents were the result of insider activity, up slightly from 12.1% of incidents reported in Q12017.

## Mid-Year 2017 Exposed Records by Threat Vector

| Threat Vector | Records Exposed |
|---|---|
| Outside | 2,227,842,612 |
| Inside-Unknown | 2,001,248,057 |
| Inside-Accidental | 1,739,943,232 |
| Unknown | 45,540,090 |
| Inside-Malicious | 567,571 |
| **Total** | **6,015,141,562** |

A single insider incident exposed Two billion records.

## Mid-Year 2017 – Breach Discovery Method

| | Internal Discovery - Incidents | Internal Discovery - Records | External Discovery - Incidents | External Discovery - Records | Undisclosed Discovery - Incidents | Undisclosed Discovery - Records |
|---|---|---|---|---|---|---|
| Q1 | 221 | 65,173,264 | 783 | 3,345,957,501 | 376 | 17,670,845 |
| Q2 | 222 | 2,966,956 | 314 | 486,285,236 | 311 | 2,097,077,760 |
| YTD | 443 | 68,140,220 | 1,097 | 3,832,242,737 | 687 | 2,114,748,605 |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Top 10 Breaches Data Types and Severity Scores[1]

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

| Breach Type | Records Exposed | Percentage of Total Exposed | Data Type[2] | Severity Score |
|---|---|---|---|---|
| Web | 2,000,000,000 | 33.2% | ADD/NAA/NUM | 10.0 |
| Web | 1,374,159,612 | 22.8% | ADD/EMA/FIN/MISC/NAA | 10.0 |
| Hack | 1,221,893,767 | 20.3% | EMA/PWD | 10.0 |
| Web | 267,693,854 | 4.5% | EMA/NUM | 9.80 |
| Web | 198,000,000 | 3.3% | ADD/DOB/MISC/NAA/NUM | 10.0 |
| Web | 135,000,000 | 2.2% | ADD/FIN/MISC/NAA/NUM/SSN | 9.68 |
| Hack | 129,696,449 | 2.2% | EMA/PWD | 9.71 |
| Hack | 126,761,168 | 2.1% | ADD/NAA/NUM | 9.40 |
| Hack | 91,890,110 | 1.5% | EMA/PWD/USR | 9.56 |
| Hack | 77,000,000 | 1.3% | EMA/PWD/USR | 9.96 |
| **The top 10 breaches exposed 5,622,094,960 records, or 93.4% of the total records exposed in the first 6 months** | | | | |

## Mid-Year 2017 Analysis by Data Family

| | Percentage of Total Breaches | Percentage of Total Exposed Records | Percentage of Total Breaches | Percentage of Total Exposed Records |
|---|---|---|---|---|
| **Data Family** | **Mid-Year 2016** | **Mid-Year 2016** | **Mid-Year 2017** | **Mid-Year 2017** |
| **Electronic** | 90.18% | 99.98% | 93.22% | 99.98% |
| **Physical** | 6.75% | <1% | 4.62% | <1% |
| **Unknown** | 3.07% | <1% | 2.16% | <1% |

## Mid-Year 2017 Confidentiality Impact



**Confidentality Impact**

Unknown 4%
Potential 15%
Confirmed 81%

The majority of breaches continue to result in confirmed unauthorized access to sensitive data

---

[1] See page 13 for additional detail on these incidents.
[2] See page 17 for a description of abbreviations.

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Analysis by Data Type - Percentage of Breaches



**Incidents by Data Type Exposed**

| Data Type | Percentage |
|---|---|
| Name | 40.6% |
| Email Address | 33.2% |
| Physical Address | 30.4% |
| Password | 28.0% |
| Social Security Number | 26.1% |
| Credit Card Number | 18.5% |
| Financial Account Number | 18.5% |
| Undisclosed | 17.9% |
| User Name | 15.5% |
| Miscellaneous | 14.4% |
| Date of Birth | 12.0% |
| Phone Number | 10.5% |

Compared to the same time period in 2016, the percentage of breaches impacting Social Security numbers increased from 17.6% in 2016 to 26.1% in 2017. Likewise, the percentage of breaches impacting Names increased from 36.1% to 40.6% and the percentage impacting physical addresses increased from 21.6% to 30.4%. Research indicates this effect is attributable to the steady rise of successful phishing campaigns targeting W-2 data during the first 4 months of the year.

## Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years

| Data Type | First 6 Months 2017 | First 6 Months 2016 | First 6 Months 2015 |
|---|---|---|---|
| Name | 40.6% | 36.1% | 27.8% |
| Email Address | 33.2% | 42.9% | 45.5% |
| Physical Address | 30.4% | 21.6% | 12.3% |
| Password | 28% | 39.8% | 52.2% |

The "W-2 phishing effect" is more evident when comparing the percentage of breaches impacting 2017's top four data types over time. Access credentials in the form of username / email address and password remain popular targets, but the overall number of breaches impacting these records has steadily declined during the first half of 2017 as attention turns to data more directly useful for tax fraud.

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Mid-Year 2017 Analysis of Records per Breach

| Exposed Records | Number of Breaches | Percent of Total |
|---|---|---|
| Unknown/Undisclosed | 1024 | 46.0% |
| 1 to 100 | 317 | 14.2% |
| 101 to 1,000 | 336 | 15.1% |
| 1,001 to 10,000 | 320 | 14.4% |
| 10,001 to 100,000 | 132 | 5.9% |
| 100,001 to 500,000 | 36 | 1.6% |
| 500,001 to 999,999 | 12 | 0.5% |
| 1 M to 10 M | 30 | 1.3% |
| > 10 M | 20 | 0.9% |

For the third year in a row, the number of incidents with exposed records either unknown or unreported increased. At this point in 2015, it was 27.6%; in 2016, it was 35.4%.

## Mid-Year 2017 Breach Types/Records Exposed – Top 5

| Breach Category | Number of Breaches | Number of Records Exposed | Average Records per Breach | Percent of Total Records Exposed |
|---|---|---|---|---|
| Hacking | 927 | 1,839,750,699 | 1,984,629 | 30.59% |
| Skimming | 272 | 4,874 | 18 | 0.00% |
| Phishing | 253 | 458,964 | 1,814 | 0.01% |
| Virus/Malware | 209 | 6,918,120 | 33,101 | 0.12% |
| Web | 158 | 4,069,836,698 | 25,758,460 | 67.67% |

## Mid-Year 2017 Analysis of Incidents by NAICS Economic Sector



Distribution of Incidents by Economic Sector

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Distribtuion of Business Groups Within Economic Sectors – Top 3

| Economic Sector | Business Group | Percentage of Breaches Within Economic Sector |
|---|---|---|
| Information (51) | Software / Web Services | 79.9% |
| | Mass Media | 11.2% |
| | Telecommunications | 7.3% |
| HealthCare (62) | Non-Hospital Facilities | 33.3% |
| | Hospitals | 29.5% |
| | Practitioner Offices | 29.5% |
| Public Sector (92) | Federal | 33.8% |
| | State | 20.6% |
| | Cities | 19.5% |

## Mid-Year 2017 Analysis by Country



**Incidents by Location**

| | |
|---|---|
| Other | 23.6% |
| USA | 61.4% |
| Unknown | 15.0% |

**Records Exposed by Location**

| | |
|---|---|
| Other | 67.9% |
| USA | 31.1% |
| Unknown | 1.0% |

The Top 10 countries accounted for 1,708, or 76.6% of the breaches reported and 97.7% of the records compromised.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Mid-Year 2017 Analysis by Country – Top 10



**Incidents by Country -Top 10**

| Country | Incidents |
|---|---|
| United States | 1367 |
| United Kingdom | 104 |
| Canada | 59 |
| India | 52 |
| Australia | 34 |
| China | 22 |
| Ukraine | 19 |
| Russian Federation | 19 |
| Indonesa | 18 |
| Iran | 14 |

North America accounted for 64.2% of breaches

## Mid-Year 2017 Exposed Records by Country

| Ranking | Number of Breaches | Country | Total Exposed Records | Average Records per Breach | Median Number of Records | Percentage of Exposed Records |
|---|---|---|---|---|---|---|
| 1 | 22 | China | 3,822,024,257 | 173,728,375 | 3,371,754 | 48.83% |
| 2 | 1367 | United States | 3,746,193,334 | 2,740,449 | 1,700 | 47.86% |
| 3 | 52 | India | 179,055,018 | 3,443,366 | 308 | 2.29% |
| 4 | 2 | Philippines | 55,254,020 | 27,627,010 | - | 0.71% |
| 5 | 7 | Hong Kong | 12,041,792 | 1,720,256 | 1,890,876 | 0.15% |
| 6 | 4 | South Africa | 6,700,000 | 1,675,000 | - | 0.09% |
| 7 | 104 | United Kingdom | 2,401,829 | 23,095 | 669 | 0.03% |
| 8 | 59 | Canada | 2,107,262 | 35,716 | 503 | 0.03% |
| 9 | 2 | Finland | 1,100,023 | 550,012 | - | 0.01% |
| 10 | 7 | Japan | 722,096 | 103,157 | 121 | 0.01% |

Large breaches affecting 1,000,000 or more records heavily influences the average number of records lost in certain countries. The median number of records lost in the five countries reporting the most breaches ranges between 308 and 1,700, with Australia coming in at 872.

## Mid-Year 2017 Distribution of Breaches By State



The top 10 states represent 51% of US breaches.

## Mid-Year 2017 Analysis of US State Rankings- Exposed Records

| Exposed Records Ranking | US State | Total Exposed Records | Number of Breaches | Exposed Records/Breach | Percentage of USA Exposed Records |
|---|---|---|---|---|---|
| 1 | WA | 1,375,336,881 | 27 | 50,938,403 | 73.42% |
| 2 | NJ | 33,724,579 | 29 | 1,162,917 | 1.31% |
| 3 | CA | 10,690,370 | 140 | 76,360 | 0.31% |
| 4 | NY | 8,163,474 | 90 | 90,705 | 0.19% |
| 5 | AR | 4,890,000 | 7 | 698,571 | 0.16% |
| 6 | TX | 4,777,984 | 98 | 48,755 | 0.15% |
| 7 | GA | 3,798,732 | 23 | 165,162 | 0.10% |
| 8 | MD | 2,674,211 | 44 | 60,778 | 0.09% |
| 9 | MI | 2,426,296 | 22 | 110,286 | 0.07% |
| 10 | FL | 1,519,843 | 94 | 16,169 | 0.02% |

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Mid-Year 2017 Breaches Involving Third Parties

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

### Third Party Breaches by Business Type



- Medical
- Government
- Business
- Unknown
- Education

- Organizations classified in the business sector account for more than 50% of the breaches impacting data belonging to customers, clients or other 3rd parties.
- Three of the largest breaches reported in the first six months impacted 3rd parties.
- Hacking remains the dominant breach type for incidents impacting 3rd Parties, with regard to both the number of breaches and the number of records compromised.



   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Mid-Year 2017 – Breach Severity Scores & Scoring

We can all readily agree that not all data breaches are created equal. Where disagreement arises is when we attempt to rate the 'severity' or 'impact' of a breach. At Risk Based Security we have combined our knowledge of the security industry, business experience and our comprehensive data breach information to calculate a Data Breach Severity Score.



### Breach Severity Scores by Quarter

| | 9.0 – 10.0 | 8.0 – 8.99 | 7.0 – 7.99 | 6.0 – 6.99 | 5.0 – 5.99 | 4.0 – 4.99 | 3.0 – 3.99 | 2.0 – 2.99 | 1.0 – 1.99 | < 1 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1Q2017 | 12 | 11 | 27 | 78 | 319 | 574 | 244 | 60 | 46 | 4 |
| 2Q2017 | 6 | 5 | 44 | 17 | 39 | 245 | 330 | 143 | 18 | 5 |

> On a positive note, breach severity scores declined in the second quarter of 2107. 58.2% of breaches reported in Q2 scored 3 or below while 25.7% of Q1 reported breaches scored 3 or below.

## Mid-Year 2017 – Breach Severity Scores – Top 10

| Score | Reported | Organization | Top 10 Summary |
|---|---|---|---|
| 10 | Q2 | DU Group dba DU Caller | (Web) 2,000,000,000 user phone numbers, names and addresses inappropriately made accessible in an uncensored public directory |
| 10 | Q1 | NetEase, Inc. dba 163.com | (Hacking) 1,221,893,767 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 10 | Q1 | River City Media, LLC | (Web) 1,374,159,612 names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups exposed by faulty `rsync` backup |
| 10 | Q2 | Deep Root Analytics | (Web) Approximately 198,000,000 voter names, addresses, dates of birth, phone numbers, political party affiliations, and other demographic information exposed in an unsecured Amazon S3 bucket |

    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM    2018CH15728

| Score | Reported | Organization | Top 10 Summary |
|-------|----------|--------------|----------------|
| 9.96 | Q2 | Edmodo | (Hacking) 77,000,000 user email addresses, usernames, and `bcrypt` hashed passwords with salts stolen by hackers through undisclosed means |
| 9.80 | Q1 | EmailCar | (Web) 267,693,854 email addresses and phone numbers exposed in an unsecure MongoDB installation and later dumped on the Internet |
| 9.71 | Q1 | Tencent Holdings Ltd dba QQ.com | (Hacking) 129,696,449 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 9.68 | Q2 | National Social Assistance Programme (India) | (Web) Roughly 135,000,000 Aadhaar numbers and 100,000,000 linked bank account numbers, as well as names, caste, religion, addresses, phone numbers, photographs, and assorted financial details leaked on government web portals |
| 9.56 | Q2 | Youku | (Hacking) 91,890,110 user accounts with usernames, email addresses and MD5 encrypted passwords compromised by hackers and offered for sale |
| 9.45 | Q1 | Yahoo Japan | (Hacking) 23,590,165 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |

## Top 20 Largest Breaches All Time (Exposed Records Count)

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|----------------------|---------|-----------------|---------------------|-----------------|-----------------|
| **Highest All Time** 5/13/2017 | User phone numbers, names and addresses inappropriately made accessible in an uncensored public directory | 2 Billion | DU Caller Group (DU Caller) | Business - Technology | China |
| **Number 2** 3/3/2017 | Names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups, exposed by faulty `rsync` backup. | 1.3 Billion | River City Media, LLC | Business - Technology | United States |
| **Number 3** 1/25/2017 | A database holding email addresses and passwords stolen by hackers and offered for sale on the dark web. | 1.2 Billion | NetEase, Inc. dba 163.com | Business – Technology | China |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 4** 12/14/2016 | While investigating the #4 incident on this list, a second hacking event was discovered targeting user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 1 Billion | Yahoo | Business - Technology | United States |
| **Number 5** 9/22/2016 | Hack exposes user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 500 Million | Yahoo | Business - Technology | United States |
| **Number 6** 10/18/2016 | Hackers exploit a Local File Inclusion vulnerability, compromising member email addresses, usernames, and encrypted passwords, IP addresses and membership statuses. | 412 Million | FriendFinder Networks, Inc | Business - Technology | United States |
| **Number 7** 5/27/2016 | Hack exposes user account records containing SHA1 encrypted passwords, email addresses. | 360 Million | MySpace | Business - Technology | United States |
| **Number 8** 1/1/2017 | Email addresses and phone numbers were exposed in an unsecure MongoDB installation, which was later downloaded and dumped on the Internet | 267 Million | EmailCar | Business - Technology | China |
| **Number 9** 8/22/2014 | Hack of websites exposes names, registration numbers, usernames and passwords. | 220 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 10** 12/3/2016 | Hackers offer for sale a database containing a variety of personal and financial details. | 203 Million | Organization's Name has not been reported | Unknown | Unknown |
| **Number 11** 10/19/2013 | Fraudulent account used to gain access to credit card numbers, social security numbers, names, and financial account numbers. | 200 Million | Court Ventures, Inc. | Business - Data | United States |
| **Number 12** 6/19/2017 | Unsecured Amazon S3 bucket exposes voter names, addresses, dates of birth, contact information and voter preferences. | 198 Million | Deep Root Analytics | Business / Business | United States |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 13** 12/28/2015 | Mis-configured database exposes voter names, dates of birth, addresses, phone numbers, political party affiliations, and genders. | 191 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 14** 6/21/2014 | Hack exposes trip details of customers after cracking MD5 hashes | 173 Million | NYC Taxi & Limousine Commission | Government - City | United States |
| **Number 15** 6/23/2016 | Hack exposes USA voter information. | 154 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 16** 10/3/2013 | Hack exposed customer names, IDs, encrypted passwords and debit/ credit card numbers with expiration dates, source code and other customer order information. | 152 Million | Adobe Systems, Inc. | Business - Technology | United States |
| **Number 17** 3/17/2012 | Firm may have illegally bought and sold customers' information. | 150 Million | Shanghai Roadway D&B Marketing Services Co. | Business - Data | China |
| **Number 18** 5/21/2014 | Hack exposes names, encrypted passwords, email addresses, registered addresses, phone numbers and dates of birth. | 145 Million | eBay, Inc. | Business - Retail | United States |
| **Number 19** 6/8/2013 | North Korean Hackers expose email addresses and identification numbers. | 140 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 20** 5/2/2017 | Leaky governmental websites expose Aadhaar numbers, banking details, names and other personal information. | 135 Million | National Social Assistance Programme | Government - Federal | India |

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

## Methodology & Terms

Risk Based Security's research methods include automated processes coupled with traditional human research and analysis. Our proprietary applications crawl the Internet 24x7 to capture and aggregate potential data breach breaches for our researchers to analyze. In addition, the research team manually verifies news feeds, blogs, and other sources looking for new data breaches as well as new information on previously disclosed incidents. The database also includes information obtained through Freedom of Information Act (FOIA) requests, seeking breach notification documentation from various state and federal agencies in the United States. The research team extends our heartfelt thanks to the individuals and agencies that assist with fulfilling our requests for information.

**Data Standards and the use of "Unknown"**

In order for any data point to be associated with a breach entry, Risk Based Security requires a high degree of confidence in the accuracy of the information reported as well as the ability to reference a public source for the information. In short, the research team does not guess at the facts. For this reason the term "Unknown" is used when the item cannot be verified in accordance with our data validation requirements. This can occur when the breached organization cannot be identified but leaked data is confirmed to be valid or when the breached organization is unwilling or unable to provide sufficient clarity to the data point.

**Breach Types are defined as follows:**

| Name | Description |
|------|-------------|
| Disposal Computer | Discovery of computers not disposed of properly |
| Disposal Document | Discovery of documents not disposed of properly |
| Disposal Drive | Discovery of disk drives not disposed of properly |
| Disposal Mobile | Discovery of mobile devices not disposed of properly |
| Disposal Tape | Discovery of backup tapes not disposed of properly |
| Email | Email communication exposed to unintended third party |
| Fax | Fax communication exposed to unintended third party |
| Fraud SE | Fraud or scam (usually insider-related), social engineering |
| Hack | Computer-based intrusion |
| Lost Computer | Lost computer (unspecified type in media reports) |
| Lost Document | Discovery of documents not disposed of properly, not stolen |
| Lost Drive | Lost data drive (unspecified if IDE, SCSI, thumb drive, etc.) |
| Lost Laptop | Lost laptop (generally specified as a laptop in media reports) |
| Lost Media | Media (e.g. disks) reported to have been lost by a third party |
| Lost Mobile | Lost mobile phone or device such as tablets, etc. |
| Lost Tape | Lost backup tapes |
| Missing Document | Missing document, unknown or disputed whether lost or stolen |
| Missing Drive | Missing drive, unknown or disputed whether lost or stolen |
| Missing Laptop | Missing laptop, unknown or disputed whether lost or stolen |
| Missing Media | Missing media, unknown or disputed whether lost or stolen |
| Other | Miscellaneous breach type not yet categorized |
| Phishing | Masquerading as a trusted entity in an electronic communication to obtain data |
| Seizure | Forcible taking of property by a government law enforcement official |
| Skimming | Using electronic device (skimmer) to swipe victims' credit/debit card numbers |
| Snail Mail | Personal information in "snail mail" exposed to unintended third party |
| Snooping | Exceeding intended privileges and accessing data not authorized to view |
| Stolen Computer | Stolen desktop (or unspecified computer type in media reports) |
| Stolen Document | Documents either reported or known to have been stolen by a third party |
| Stolen Drive | Stolen data drive, unspecified if IDE, SCSI, thumb drive, etc. |
| Stolen Laptop | Stolen Laptop (generally specified as a laptop in media reports) |
| Stolen Media | Media generally reported or known to have been stolen by a third party |

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728

| Name | Description |
|---|---|
| Stolen Mobile | Stolen mobile phone or device such as tablets, etc. |
| Stolen Tape | Stolen backup tapes |
| Unknown | Unknown or unreported breach type |
| Virus (Malware) | Exposure to personal information via virus or Trojan (possibly classified as hack) |
| Web | Web-based intrusion, data exposed to the public via search engines, public pages |

**Data Type Definitions**

| Abbreviation | Description |
|---|---|
| CCN | Credit Card Numbers |
| SSN | Social Security Numbers (or Non-US Equivalent) |
| NAA | Names |
| EMA | Email Addresses |
| MISC | Miscellaneous |
| MED | Medical |
| ACC | Account Information |
| DOB | Date of Birth |
| FIN | Financial Information |
| UNK | Unknown |
| PWD | Passwords |
| ADD | Addresses |
| USR | User Name |
| NUM | Phone Number |
| IP | Intellectual Property |

*NO WARRANTY.*

*Risk Based Security, Inc. makes this report available on an "As-is" basis and offers no warranty as to its accuracy, completeness or that it includes all the latest data breach breaches.  The information contained in this report is general in nature and should not be used to address specific security issues. Opinions and conclusions presented reflect judgment at the time of publication and are subject to change without notice. Any use of the information contained in this report is solely at the risk of the user. Risk Based Security, Inc. assumes no responsibility for errors, omissions, or damages resulting from the use of or reliance on the information herein. If you have specific security concerns please contact Risk Based security, Inc. for more detailed data loss analysis and security consulting services.*

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## About Risk Based Security

Risk Based Security (RBS) provides detailed information and analysis on Data Breaches, Vendor Risk Scores and Vulnerability Intelligence. Our products, Cyber Risk Analytics (CRA) and VulnDB, provide organizations with access to the most comprehensive threat intelligence knowledge bases available, including advanced search capabilities, access to raw data via API, and email alerting to assist organizations in taking the right actions in a timely manner. In addition, our YourCISO offering provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal.

VulnDB is the most comprehensive and timely vulnerability intelligence available and provides actionable information about the latest in security vulnerabilities via an easy-to-use SaaS Portal, or a RESTful API for easy integration into GRC tools and ticketing systems. VulnDB allows organizations to search on and be alerted to the latest vulnerabilities, both in end-user software and the third-party libraries or dependencies that help build applications. A subscription to VulnDB provides organizations with simple to understand ratings and metrics on their vendors and products, and how each contributes to the organization's risk-profile and cost of ownership.

Cyber Risk Analytics (CRA) provides actionable security ratings and threat intelligence on a wide variety of organizations. This enables organizations to reduce exposure to the threats most likely to impact them and their vendor base. In addition, our PreBreach vendor risk rating, the result of a deep-view into the metrics driving cyber exposures, are used to better understand the digital hygiene of an organization and the likelihood of a future data breach. The integration of PreBreach ratings into security processes, vendor management programs, cyber insurance processes and risk management tools allows organizations to avoid costly risk assessments, while enabling businesses to understand its risk posture, act quickly and appropriately to proactively protect its most critical information assets.

YourCISO provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal. YourCISO provides organization ready access to a senior executives and highly skilled technical security experts with a proven track record, matched specifically to your needs. The YourCISO service is designed to be an affordable long term solution for addressing information security risks. YourCISO brings together all the elements an organization needs to develop, document and manage a comprehensive information security program.

For more information, please visit:

https://www.riskbasedsecurity.com/
https://vulndb.cyberriskanalytics.com/
https://www.cyberriskanalytics.com/
https://www.yourciso.com/

Or call 855-RBS- RISK.

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 12/19/2018 5:00 PM   2018CH15728