**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CONTINENTAL WESTERN INSURANCE COMPANY,** | |
| **Plaintiff,** | **Case No. 22-cv-3575** |
| **v.** | **Judge Jorge L. Alonso** |
| **TONY'S FINER FOODS ENTERPRISES, INC., TONY'S FINER FOODS NO. 6, INC., TONY'S FINER FOODS NO. 9, INC. d/b/a TONY'S FRESH MARKET, and CHARLENE FIGUEROA,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Continental Western Insurance Company ("Continental") brings a six-count complaint for declaratory judgment against Defendants Tony's Finer Foods Enterprises, Inc., Tony's Finer Foods No. 6,[1] Inc., Tony's Finer Foods No. 9, Inc. d/b/a Tony's Fresh Market (together, "Tony's"), and Charlene Figueroa ("Figueroa") seeking a declaration that Continental, which issued an insurance policy to Tony's, has no duty to defend or indemnify Tony's in the underlying lawsuit filed by Figueroa, individually and on behalf of all others similarly situated, under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). The parties have filed cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court denies Continental's motion and grants Tony's cross-motion.

---

[1] The parties appear to agree that the Complaint incorrectly refers to Tony's Finer Foods No. 6, Inc. as Tony's Finer Foods No. 66, Inc.

1

## I.     Background

On December 19, 2018, Defendant Figueroa filed a putative class action complaint ("*Figueroa* Complaint") against Tony's in the Circuit Court of Cook County, Illinois, Case No. 2018 CH 15728 ("*Figueroa* Lawsuit"). (Compl. ¶ 8, ECF No. 1; *Figueroa* Compl., ECF No. 1-1.) The *Figueroa* Complaint alleges that Figueroa was an hourly employee of Tony's between March 8, 2017 and September 17, 2018, and that as a condition of employment, she was required to scan her fingerprints as a method to track her time each time she clocked in and out. (*Figueroa* Compl. ¶¶ 56-60, ECF No. 1-1.) Tony's allegedly stored Figueroa's fingerprint data in their Kronos employee database, even though she was never informed of the specific limited purposes or length of time for which Tony's collected, stored, used, and/or disseminated her biometric data; informed of any biometric data retention policy developed by Tony's; informed whether Tony's will ever permanently delete her biometric data; or provided with a written release to sign allowing Tony's to collect, store, use or disseminate her biometric data. (*Id*. ¶¶ 60-63.) Tony's allegedly improperly disclosed their employee's fingerprint data to at least one third-party, Kronos, and possibly others. (*Id*. ¶ 15.)

The *Figueroa* Complaint asserts two causes of action against Tony's: one for violation of the BIPA and one for negligence. Illinois' BIPA, among other things, requires companies to obtain informed written consent from employees before acquiring their biometric data, 740 ILCS 14/15(b), prohibits private entities from disclosing a person's biometric information without first obtaining consent for that disclosure, 740 ILCS 14/15(d)(1), and mandates that companies in possession of biometric data establish and maintain and comply with a biometric data retention and deletion policy, 740 ILCS 14/15(a). Figueroa alleges that Tony's violated these requirements, and therefore her and the putative class members' right to privacy, as set forth in

BIPA. (*Figueroa* Compl. ¶ 101, ECF No. 1-1.) She alleges that these violations have raised a material risk that her and the putative class members' biometric information will be unlawfully accessed by third parties. (*Id*. ¶ 103.) The same set of facts forms the basis for Figueroa's negligence claim. (*Id*. ¶¶ 105-118.)

Figueroa and others similarly situated allege that they have suffered an injury, including mental anguish, as a result of the BIPA violations. (*Id*. ¶¶ 19-20, 66, 69-71.) The class that Figueroa seeks to certify is defined as: "All individuals working for Tony's Finer Foods Enterprises, Inc., Tony's Finer Foods No. 6, Inc., and/or Tony's Finer Foods No. 9 Inc., in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any defendant during the applicable statutory period." (*Id*. ¶ 76.)

Tony's seeks coverage of the *Figueroa* Lawsuit under a multi-peril commercial lines insurance policy, policy number CPA 3123453-20, issued to it by Continental for the policy period of March 15, 2016 to March 15, 2017 ("Continental Policy" or "Policy"). (Compl. ¶ 34, ECF No. 1.) The Continental Policy provides, among other things, commercial general liability ("CGL") coverage subject to a $1,000,000 limit of liability per occurrence and a general aggregate limit of $2,000,000. (*Id*.)

The Continental Policy sets forth two coverage parts that are at issue in this declaratory judgment action. First, the Coverage A insuring agreement states as follows, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

> defend the insured against any "suit" seeking damages for "bodily injury" or
> "property damage" to which this insurance does not apply. We may, at our
> discretion, investigate any "occurrence" and settle any claim or "suit" that
> may result. . . .
> No other obligation or liability to pay sums or perform acts or services is
> covered unless explicitly provided for under Supplementary Payments –
> Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> > **(1)** The "bodily injury" or "property damage" is caused by an
> > "occurrence" that takes place in the "coverage territory"; [and]
> > **(2)** The "bodily injury" or property damage" occurs during the
> > policy period; . . . .

(Continental Policy ECF p. 135 of 333, ECF No. 1-2.)[2]

The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a

person, including death resulting from any of these at any time." (*Id.* at ECF p. 147 of 333.)

Second, the Coverage B insuring agreement states as follows, in pertinent part:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "personal and advertising injury" to which this insurance
> applies. We will have the right and duty to defend the insured against any
> "suit" seeking those damages. However, we will have no duty to defend the
> insured against any "suit" seeking damages for "personal and advertising
> injury" to which this insurance does not apply. We may, at our discretion,
> investigate any offense and settle any claim or "suit" that may result. . . .
> No other obligation or liability to pay sums or perform acts or services is
> covered unless explicitly provided for under Supplementary Payments –
> Coverages **A** and **B**.
>
> **b.** This insurance applies to "personal and advertising injury" caused by an
> offense arising out of your business but only if the offense was committed in
> the "coverage territory" during the policy period.

(*Id.* at ECF p. 140 of 333.)

---

[2] Given the substantial length of the Continental Policy and the lack of consecutive pagination,
the Court cites herein to the ECF page numbers.

The term "personal and advertising injury" is defined in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (*Id*. at ECF p. 148 of 333.)

Endorsements to the Continental Policy set forth the following exclusion to Coverage B:

> This insurance does not apply to: . . .
> **p. Recording and Distribution Of Material or Information In Violation Of Law**
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(*Id*. at ECF p. 157 of 333.) There is a substantially identical exclusion with respect to Coverage A. (*Id*.)

Next, Coverage B of the Continental Policy does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

> This exclusion applies even if damages are claimed for notification costs, credit expenses, public relations expenses, or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(*Id.* at ECF p. 165 of 333.) There is a substantially similar exclusion with respect to Coverage A.

(*Id.*)

Finally, under the "Employment-Related Practices Exclusion," Coverage B does not

apply to:

> "Personal and advertising injury" to:
> (1) A person arising out of any:
> (a) Refusal to employ that person;
> (b) Termination of that person's employment; or
> (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; . . .

(*Id.* at ECF p. 168 of 333.) There is a substantially identical exclusion with respect to Coverage

A. (*Id.*)

On July 11, 2022, Continental filed this declaratory judgment action against Tony's and

Figueroa,[3] seeking a declaration that it has no duty to defend or indemnify Tony's in the

*Figueroa* Lawsuit because: (I) the *Figueroa* Lawsuit does not allege "bodily injury" under

Coverage A of the Policy; (II) even if the *Figueroa* Lawsuit alleged "bodily injury," the

Recording and Distribution of Material Or Information In Violation of Law Exclusion precludes

coverage under Coverage A; (III) the Recording and Distribution of Material Or Information In

Violation of Law Exclusion precludes coverage under Coverage B; (IV) the Access Or

Disclosure Of Confidential Or Personal Information exclusions preclude coverage under either

---

[3] Continental does not allege nor explain why Figueroa is a party to this lawsuit. Because Figueroa's status in this case is not implicated by the pending motions, the Court does not address that issue.

6

Coverage A and Coverage B; (V) to the extent that Figueroa, as well as any other putative class member, were injured outside of the policy period, there is no coverage for such injuries; and (VI) the Employment-Related Practices Exclusion precludes coverage under either Coverage A and Coverage B.

The parties filed the instant cross motions for judgment on the pleadings regarding whether Continental has a duty to defend Tony's against the *Figueroa* Lawsuit. (*See* Pl. Continental Western Ins. Co.'s Mot. for Judgment on the Pleadings, ECF No. 18; Tony's Dfs.' Cross-Mot. for Judgment on the Pleadings, ECF No. 25.) Specifically, the parties' cross motions only address whether the three invoked exclusions apply. Because the cross motions do not address Continental's claims respecting the duty to indemnify (including whether determining indemnification is ripe at this stage of the proceedings if Continental is found to have a duty to defend), whether the *Figueroa* Lawsuit alleges "bodily injury," or whether the injuries alleged in the *Figueroa* Lawsuit fall within the Policy's policy period, the Court does not address those issues in this Opinion.

Jurisdiction is proper over this action because the amount in controversy exceeds $75,000 and the parties are completely diverse. 28 U.S.C. §§ 1332(a)(1). Plaintiff Continental is a citizen of Iowa. (Compl. ¶ 1, ECF No. 1.) Defendants Tony's Finer Foods Enterprises, Inc., Tony's Finer Foods No. 6, Tony's Finer Foods No. 9, and Figueroa are citizens of Illinois. (*Id.* ¶¶ 2-5.)

## II. Legal Standard

Rule 12(c) permits a party to "move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). Motions brought under Rule 12(c) are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

7

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party. . . is entitled to judgment as a matter of law." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) (citation omitted). "The construction of an insurance policy's provisions is a question of law." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

8

### III.    Discussion

The parties appear to agree that Illinois law governs the Court's interpretation of the Policy. "An insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). When determining whether an insurer has a duty to defend, before considering whether any exclusion bars coverage under an insurance policy, a court must first determine whether the allegations of the underlying lawsuit fall within or potentially within the scope of any insuring agreement. *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, No. 22-2313, 2023 WL 4004766, at *7 (7th Cir. June 15, 2023); *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole . . . , with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Outboard Marine Corp.*, 607 N.E.2d at 1212 (Ill. 1992) (citations omitted).

Here, if the *Figueroa* Complaint "states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," Continental must provide a defense. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir. 1992) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)).

### A.  The Insuring Agreement

Coverage B in the Continental Policy insures "personal and advertising injury," according to the other terms and condition of the Policy. The question thus is whether the *Figueroa* Lawsuit alleges "personal and advertising injury," which is defined in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following

offenses: . . . e. Oral or written publication, in any manner, of material that violates a person's right of privacy[.]" (Continental Policy at ECF p. 148 of 333, ECF No. 1-2.) The Policy does not define the terms "publication," "material," or "right of privacy," and so they must be afforded "their plain, ordinary, and popular meanings." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 316 (Ill. 2006).

The Illinois Supreme Court considered materially similar policy language and terms with respect to BIPA claims in *West Bend Mutual Insurance Company v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). First, the court found that the underlying complaint alleged a potential injury based on the allegations that plaintiff "suffered emotional upset, mental anguish, and mental injury" from the employer's "collecting and sharing her biometric identifiers and biometric information" with a third-party vendor. *Id*. at 59. Second, the court found that the undefined term "publication" was ambiguous and so would be strictly construed against the insurer to include a communication with a single party. *Id*. at 57, 59. Third, the court found that the underlying complaint alleged a potential violation of the plaintiff's right to privacy because under BIPA, disclosing a person's biometric identifiers or information without his or her consent or knowledge necessarily violates that person's right to privacy in biometric information. *Id*. at 58-59. Accordingly, the allegations in the underlying complaint fell within or potentially within the policies' coverage for personal and advertising injury. *Id*. at 59.

Like in *Krishna Schaumburg Tan*, the *Figueroa* Complaint alleges, among other things, that Tony's "improperly disclose their employee's fingerprint data to at least one third-party, Kronos, and likely others" in violation of the BIPA. (*Figueroa* Compl. ¶¶ 15, 86-104, ECF No. 1-1.) It further alleges that Figueroa and others similarly situated have suffered an injury, including mental anguish, based on the improper disclosure of their biometric data to third

parties. (*Id*. ¶¶ 19-20, 66, 69-71.) Accordingly, the *Figueroa* Lawsuit falls within or potentially within the scope of Coverage B in the Continental Policy.

### B. The Exclusions

The Court turns next to whether any of the three exclusions asserted by Continental bar coverage of the *Figueroa* Lawsuit. The burden falls on the insurer to affirmatively establish that an exclusion applies. *Wynndalco Enters.*, 2023 WL 4004766 at *7 (citation omitted). "Exclusions are read narrowly and apply only if their application is clear and free from doubt." *Id*. (citations omitted). "As a general matter, an ambiguity should be resolved against the insurer and in favor of the insured." *Id*. at *8 (citing *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 999-1000 (7th Cir. 2018)).

#### a. Recording And Distribution Of Material or Information In Violation Of Law Exclusion

Continental first invokes the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, which excludes from Coverage B "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:" (1) the TCPA; (2) the CAN-SPAM Act of 2003; (3) the FCRA and FACTA; or "(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (Continental Policy ECF p. 157 of 333, ECF No. 1-2.) Continental argues that the *Figueroa* Lawsuit and the BIPA violations alleged therein fall within the fourth, catch-all provision and so are excluded from coverage.

Tony's argues in opposition that the Illinois Supreme Court in *Krishna Schaumburg Tan* rejected the application of a similar exclusion to BIPA claims. 183 N.E.3d at 61. Tony's cites to

district court opinions that rely on *Krishna Schaumburg Tan* in finding that exclusionary language identical to that in the Continental Policy is ambiguous and so must be construed in favor of coverage of BIPA claims. *See, e.g.*, *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 853 (N.D. Ill. 2022). Continental in turn argues that the exclusionary language at issue in *Krishna Schaumburg Tan* is distinguishable, as multiple district courts found when holding that language identical to that at issue here barred coverage of BIPA claims. *See Cont'l W. Ins. Co. v. Cheese Merchs. of Am., LLC*, No. 21-CV-1571, 2022 WL 4483886, at *9 (N.D. Ill. Sept. 27, 2022), *abrogated by Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, No. 22-2313, 2023 WL 4004766 (7th Cir. June 15, 2023); *Mass. Bay Ins. Co. v. Impact Fulfillment Servs., LLC*, No. 1:20CV926, 2021 WL 4392061, at *7 (M.D.N.C. Sept. 24, 2021). In short, at the time the parties filed their briefs, there was a division in the district courts over the application of the catch-all provision in the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion to BIPA claims.

Since the filing of the parties' briefs, however, the Seventh Circuit has resolved this division. In *Wynndalco Enterprises*, the Seventh Circuit considered an exclusion in a Citizens Insurance Company of America ("Citizens") policy that was the same in all material respects to the one in the Continental Policy here and held in favor of the insured. 2023 WL 4004766 at *7. As a preliminary matter, the court found that "a literal, plain-text reading of the catch-all provision would include BIPA violations." *Id*. The court then went on to consider that the Citizens policy, like the Continental Policy here, "purports, in the first instance, to provide liability coverage for a 'personal and advertising injury,' which the policy defines broadly to include not only the oral or written publication of material that violates a person's right of privacy[,] but also, *inter alia*, the oral or written publication of material that slanders or libels a

person or organization or disparages a person's or organization's goods, products or services . . . ; the use of another's advertising idea in one's own 'advertisement,' . . . ; and infringing upon another's copyright, trade dress, or slogan in one's own 'advertisement[.]'" *Id.* (citations omitted). The court noted that "[t]hese are all injuries that are subject to, or potentially subject to, statutory causes of action." *Id.* (citations omitted). As a result, reading the exclusion's catch-all provision literally and broadly would "all but eliminate coverage for certain claims that are largely, if not exclusively, statutory in nature (intellectual property claims in particular) and that the policy by its express terms otherwise purports to cover." *Id.* This conflict between the policy provisions granting and excluding coverage gave rise to ambiguity, which the court resolved in favor of the insured. *Id.* at *8. The Seventh Circuit also considered the Illinois Supreme Court's reasoning in *Krishna Schaumburg Tan* and found both that the difference in the language of the violation of statutes exclusion at issue rendered it distinguishable and that various canons of construction (*ejusdem generis* and *noscitur a sociis*) did not resolve the ambiguity presented in the Citizens policy. *Id.* at *10-12.

Because the Citizens policy and Continental Policy are the same in all respects that were material to the Seventh Circuit's analysis, the opinion in *Wynndalco Enterprises* directly controls, and is dispositive of, the parties' dispute over the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion in this case. The exclusion is ambiguous and so does not apply here to bar coverage of the *Figueroa* Lawsuit.

### b. Access Or Disclosure Of Confidential Or Personal Information Exclusion

Continental next invokes the Access Or Disclosure Of Confidential Or Personal Information Exclusion, which excludes from Coverage B, "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or

personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." (Continental Policy ECF p. 165 of 33, ECF No. 1-2.) Continental contends that the allegations in the *Figueroa* Lawsuit alleging wrongful collection, retention, and dissemination of the putative class members' private biometric information in the form of fingerprint scans fall within the scope of the exclusion.

Multiple courts within this district have found that similar exclusions bar coverage for underlying BIPA claims. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2023 WL 319235, at *4 (N.D. Ill. Jan. 19, 2023); *Cheese Merchs. of Am.*, 2022 WL 4483886 at *9; *Am. Fam. Mut., Ins. Co., S.I. v. Carnagio Enters., Inc.*, No. 20 C 3665, 2022 WL 952533, at *9 (N.D. Ill. Mar. 30, 2022). However, several other courts in this district that have considered this same issue found the other way—in favor of the insured. *See Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 855 (N.D. Ill. 2022); *Citizens Ins. Co. of Am. v. Highland Baking Co., Inc.*, No. 20-CV-04997, 2022 WL 1210709, at *1 (N.D. Ill. Mar. 29, 2022); *Am. Fam. Mut. Ins. Co. v. Caremel, Inc.,* No. 20 C 637, 2022 WL 79868, at *3 (N.D. Ill. Jan. 7, 2022). This Court finds the reasoning of the latter decisions to be most persuasive, particularly in light of the Seventh Circuit's recent opinion discussing the same canons of interpretation invoked by the parties here, albeit in respect to a different exclusion. *Wynndalco Enters.*, 2023 WL 4004766 at *7.

The Court begins with the text of the exclusion, the first clause of which broadly carves out of the coverage grant "'personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information. . . ." The word "any" has a broad meaning. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the

word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976))). "Personal information" is not defined in the Policy, but it takes no stretch of the imagination to find that it would include information typically kept private. *See Personal*, Oxford English Dictionary, https://www.oed.com/view/Entry/141482 (last visited June 29, 2023) ("Of, relating to, concerning, or affecting a person as a private individual (rather than as a member of a group or the public, or in a public or professional capacity); individual, private; one's own."); *Information*, Oxford English Dictionary, https://www.oed.com/view/Entry/95568 (last visited June 29, 2023) ( "Knowledge communicated concerning some particular fact, subject, or event."). Fingerprints are unique to a specific person, which is "why companies want [them] and use [them]." *Cheese Merchs. of Am.*, 2022 WL 4483886 at *6; *cf. Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) (fingerprints are private information). A literal, plain-text reading of the first clause would include fingerprint scans.

Based on Continental's interpretation of the exclusion, the Court's analysis would end there. But the first clause does not stand alone, and the Court must consider the language of the exclusion—and indeed, the policy—as a whole. *Swiderski Elecs.*, 860 N.E.2d at 314 ("Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.").

The remainder of the exclusion begins with "including," followed by a list of examples: " . . . including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." Fingerprints or other biometric information are not expressly listed. Tony's argues that the listed

15

examples are types of sensitive information traditionally kept private for financial or proprietary reasons (*i.e.*, patents, trade secrets, processing methods, consumer lists, financial information, and credit card information), or for personal reasons (*i.e.*, health information), and that fingerprints are neither intellectual property nor financial information, and would "stretch the definition of health information to include a physical characteristic that has nothing to do with the state of health of the individual." *Caremel*, 2022 WL 79868 at *3. Without so stating, Tony's invokes *ejusdem generis*, "a textual canon that seeks to clarify a broad or general term by looking to the specific items preceding that term for clues as to how that term should be construed." *Wynndalco Enters.*, 2023 WL 4004766 at *9. However, that canon "comes into play only if there is some doubt about the meaning of the terms used in a contract or statute[.]" *Id.* at *8. The Court accordingly sets that argument aside for the moment to determine whether the exclusion is ambiguous in the first instance.

Continental argues that even if the Court were to consider the list of examples, it begins with the illustrative and non-exhaustive term "including." *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation."). Continental also notes that the list ends with "any other type of nonpublic information," which, it argues, is so broad "it is hard to think of a wider umbrella." (Reply 10, ECF No. 27 (quoting *Cheese Merchs. of Am.*, 2022 WL 4483886 at *8).) As with the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, the breadth of Continental's interpretation of the Access Or Disclosure Of Confidential Or Personal Information Exclusion threatens to "swallow a substantial portion of the coverage that the policy otherwise explicitly purports to provide in defining a covered 'personal or advertising injury[.]'" *Wynndalco Enters.*, 2023 WL 4004766 at *8; *supra* Section III.B.a. Under Continental's

interpretation, the Continental Policy gives with one hand coverage for injury arising out of a "publication . . . of material that violates a person's right of privacy" but would take away with the other hand injury "arising out of any access to or disclosure of any person's . . . confidential or personal information"—full stop.

Of course, the "right of privacy" is commonly understood to encompass more than just preventing access to or disclosure of confidential or personal information. The Seventh Circuit admonishes district courts to take care when interpreting the meaning of "privacy" in the context of an insurance policy:

> 'Privacy' is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. . . A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted pregnancy, has both informational (secrecy) and locational (seclusion) components, with an overlay of substance (the objection to governmental regulation).

*Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 941 (7th Cir. 2004) (citations omitted). The court, without having had any Illinois cases on point as guidance at that time, found that the structure of the policy, and specifically the use of the term "publication," "strongly implies that coverage is limited to secrecy interests." *Id*. The Illinois Supreme Court subsequently disagreed, however, holding that because the "right of privacy" "connotes both an interest in seclusion and an interest in the secrecy of personal information," the policy language "'material that violates a person's right of privacy' can reasonably be understood to refer to material that violates a person's seclusion[,]" including a TCPA fax-ad claim for sending unsolicited fax advertisements. *Swiderski Elecs.*, 860 N.E.2d at 317. The Seventh Circuit's

underlying point nonetheless holds; "publication" of information—a requisite to coverage—is more often relevant to a secrecy interest than a seclusion interest.

Some district courts point out that even a broad interpretation of the Access Or Disclosure Of Confidential Or Personal Information Exclusion would not necessarily preclude coverage for claims brought under the tort of false light or the appropriation of one's name or identity for personal gain. *Cheese Merchs. of Am.*, 2022 WL 4483886 at *8. And the exclusion would not bar coverage for the TCPA fax-ad claims at issue in *Swiderski Electronics*—although claims for violations of the TCPA are otherwise expressly excluded by the Policy's Recording And Distribution Of Material Or Information In Violation Of Law Exclusion. But even where "a plain-text reading of the exclusion might not render the coverage promised earlier in the policy for 'personal and advertising injuries' *wholly* illusory," where the exclusion all but eliminates coverage for certain claims that the policy by its express terms otherwise purports to cover, the exclusion is ambiguous. *Wynndalco Enters.*, 2023 WL 4004766 at *7 (emphasis original). Here, where the Access Or Disclosure Of Confidential Or Personal Information Exclusion broadly construed would eliminate a vast swath of privacy violation claims based on the publication of personal information that the insuring agreement otherwise purports to cover, the exclusion is ambiguous.

Having found that the exclusion is ambiguous, the Court returns to *ejusdem generis* to determine whether it can resolve the ambiguity. *Cf. id.* at *8 ("But we can now consider whether resort to textual canons, and in particular, *ejusdem generis*, results in a plausible, more narrow reading of the catch-all provision that would nonetheless encompass an injury resulting from a violation of BIPA[.]"). That canon seeks to clarify the meaning of a broad or general term "on the ground that, if the general words were given their full and ordinary meaning, the specific

words would be superfluous as encompassed by the general terms. If the [drafter] had meant the general words to have their unrestricted sense, it would not have used the specific words." *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009) (citing 2A N. Singer & J. Singer, Sutherland on Statutory Construction § 47:17 at 370-73 (7th ed. 2007)). For example, "where a will leaves to a particular devisee 'my furniture, clothes, cooking utensils, housewares, motor vehicles, and all other property,' the general phrase 'all other property' will, absent contrary signals, be construed in light of the specific items previously named to include not *all* types of property, including real estate, but only other items of personal property." *Wynndalco Enters.*, 2023 WL 4004766 at *9 (emphasis original) (citing Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012)).

The Court finds that *ejusdem generis* is unhelpful here for two reasons. Typically, *ejusdem generis* is applied only where general words follow specific words. *Id*. ("Where general words follow specific words ..., the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quoting *Yates v. United States*, 574 U.S. 528, 545, (2015))); *Carnagio Enters.*, 2022 WL 952533 at *8 n.7 ("Authorities have traditionally agreed that ... [*ejusdem generis*] does not apply to a general-specific sequence. . . . In all contexts other than the pattern of specific-to-general, the proper rule to invoke is the broad associated-words canon, not the narrow *ejusdem generis* canon." (quoting Scalia and Garner, *supra*). Here, the list may include several specific examples followed by a general catch-all phrase, but the list itself follows and modifies the more general language of the first clause. (*See* Continental Policy ECF p. 165 of 333 (excluding "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's *confidential or personal information, including* . . . .") (emphasis added).)

19

The Court might nonetheless consider whether the catch-all language of "any other type of nonpublic information" can be given a more focused scope by locating a common element among the seven specific examples given just prior to the catch-all provision ("patents, trade secrets, processing methods, customer lists, financial information, credit card information, [and] health information") and imputing that same element to the catch-all provision itself. However, *ejusdem generis* does not apply when the items "are not sufficiently similar to belong to one identifiable class." *Hugh v. Amalgamated Tr. & Sav. Bank*, 602 N.E.2d 33, 38 (Ill. App. Ct. 1992). At first blush, these examples include information that a person has a right to maintain as confidential, such as trade secrets, which can include processing methods and customer lists. *See, e.g.*, *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) ("trade secrets" or "something comparable whose economic value depends on its secrecy" may be filed under seal). But as other courts have pointed out, patents are publicly available information. *See Carnagio Enters.*, 2022 WL 952533 at *8 (citing 37 C.F.R. § 1.11 (2021)). Because the items listed in this exclusion "have no readily identifiable common thread[,]" *ejusdem generis* does not resolve the ambiguity presented by the exclusion. *Id.*

The closely related but broader textual canon of *noscitur a sociis* fails to resolve the ambiguity for the same reason. "[T]he principle of *noscitur a sociis*—a word is known by the company it keeps—[is used] to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words[.]'" *Wynndalco Enters.*, 2023 WL 4004766 at *12 (quoting *Yates*, 574 U.S. at 543). Under that canon, the Court might consider whether the broad and general term "personal information" is given a more precise meaning by the examples that follow it. As previously discussed, however, there are no readily discernable clues in the list that point to any particular feature as a harmonizing factor. *See id.*

20

Because the Court is left with the conclusion that the Access Or Disclosure Of Confidential Or Personal Information Exclusion is ambiguous, the Court construes the exclusion in favor of the insured. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 721 (7th Cir. 2015). For these reasons, the exclusion does not bar coverage of the *Figueroa* Lawsuit.

### c. Employment-Related Practices Exclusion

Finally, the Continental Policy excludes from Coverage B "Personal and advertising injury" to:

(1) A person arising out of any:
   (a) Refusal to employ that person;
   (b) Termination of that person's employment; or
   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or
   . . .

(Continental Policy ECF p. 168 of 333, ECF No. 1-2.) Continental argues that the BIPA claims in the *Figueroa* Lawsuit fall within the scope of subsection (1)(c) and so are excluded from coverage. As the argument goes, the underlying claims stem from Tony's policy of requiring employees to submit to fingerprint scanning to track their time, which constitutes an "employment-related practice," and the collection of biometric information without proper informed consent is an employment-related "omission." Continental points to *Caremel* in support, which held that a substantially identical exclusion applied to preclude coverage of the underlying BIPA putative class action. 2022 WL 79868 at *4.

The Court finds that the plain language of the Employment-Related Practices Exclusion unambiguously does not encompass the *Figueroa* Lawsuit. The phrase "Employment-related practices, policies, acts or omissions" is modified by the phrase "directed at that person"—an interpretation which does not appear to be in dispute. Continental does not, however,

meaningfully address what that means. Several courts in this district that have addressed this precise issue have found that the exclusion requires an action or omission "taken against a worker in the employment context in a targeted, personal way." *Thermoflex Waukegan*, 2023 WL 319235 at *10; *see also Tony's Finer Foods Enters.*, 589 F. Supp. 3d at 930; *Carnagio Enters.*, 2022 WL 952533 at *6. Additionally, Illinois cases interpreting substantially similar employment-related practices exclusions in other contexts have found that "the salient question is whether the [allegations giving rise to the underlying complaint] were made in the context of [the employee's] employment *and related to his employment performance*." *Am. All. Ins. Co. v. 1212 Rest. Grp., L.L.C.*, 794 N.E.2d 892, 900 (Ill. App. Ct. 2003) (emphasis added); *see also Am. Econ. Ins. Co. v. Haley Mansion, Inc.*, 2013 IL App (3d) 120368-U, ¶ 24. In other words, the underlying claim "must involve an action related to an employee's performance." *Carnagio Enters.*, 2022 WL 952533 at *5. It cannot be said that Tony's general policy of requiring fingerprint scanning to track employees' time, and its failure to secure employees' informed consent, was targeted at Figueroa or any specific employee, nor do such policies relate to any particular employee's performance.

The text and the structure of the exclusion support the Court's interpretation. Subsection (1)(c) provides a non-exhaustive list of examples of "employment-related practices, policies, acts or omissions," prefaced by the term "such as," that include some legal claims (defamation, harassment, discrimination, malicious prosecution), some adverse employment actions (demotion, evaluation, reassignment, discipline), and some other personalized harms that may occur in the workplace setting (coercion, humiliation). *See Thermoflex Waukegan*, 2023 WL 319235 at *9; *see also Enis v. Cont'l Ill. Nat'l Bank & Tr. Co. of Ill.*, 795 F.2d 39, 42 (7th Cir. 1986) ("The words "include" and "such as" show that the specific instances are illustrative, not

exhaustive.") Again, "all can fairly be characterized as actions taken against a worker in the employment context in a targeted, personal way." *Thermoflex Waukegan*, 2023 WL 319235 at *9. So too can the first two subparts—refusal to hire and termination—be characterized as actions that an employer takes against a particular employee or prospective employee.

As one district court noted, adding "fingerprinting" to the list "would stick out like a sore thumb." *Tony's Finer Foods Enters.*, 589 F. Supp. 3d at 928. While fingerprinting can fairly be described as an employment practice, it is "a categorically different type of practice than everything else in the list." *Id*. For this reason, several district courts have found similar employment-related practices exclusions to be ambiguous with respect to BIPA claims and thus resolved the ambiguity in favor of the insured. *See Thermoflex Waukegan*, 588 F. Supp. 3d at 856; *Cheese Merchs. of Am.*, 2022 WL 4483886 at *4; *Highland Baking Co.*, 2022 WL 1210709 at *1. Here as well, even if the Court did not find that the *Figueroa* Lawsuit unambiguously falls outside the scope of the exclusion, there is at least ambiguity that must be resolved in the insured's favor.

Continental makes no bones about the breadth of its position: any claim that arises from an employment-related practice—in other words, any practice that can cause harm to an employee—is barred from coverage. (Reply 13-14, ECF No. 27.) Continental attempts to soften its sweeping position by pointing out that this is a CGL policy, and employment practices liability insurance is typically a separate and distinct product that could be purchased by employers. (*Id*. at 13.) Continental's position is an extraordinary one to take, considering it would render the bulk of the exclusion superfluous and runs contrary to the rule that exclusions must be read narrowly. *Wynndalco Enters.*, 2023 WL 4004766 at *7. If the exclusion intended to cover any and all claims by employees, "one wonders why the text did not take the direct

approach" and say so. *Tony's Finer Foods Enters.*, 589 F. Supp. 3d at 930. The language of the exclusion as a whole "suggests that it covers a subset of claims brought by employees." *Id*.

For these reasons, Continental fails to show that the allegations of the *Figueroa* Lawsuit fall within the scope of the Employment-Related Practices Exclusion. Further, because the *Figueroa* Lawsuit falls or potentially falls within the scope of Coverage B, and Continental fails to show that any exclusion precludes coverage, Continental has a duty to defend Tony's against the *Figueroa* Lawsuit.

## IV. Conclusion

For the reasons discussed, Continental's motion for judgment on the pleadings [18] is denied and Tony's cross motion for judgment on the pleadings [25] is granted. Tony's Motion for Leave to File Supplemental Authority *Instanter* [38] is granted. A status hearing is set for July 13, 2023 at 9:30 a.m. The parties are directed to file a joint status report by July 10, 2023.

**SO ORDERED.**                                          **ENTERED: July 5, 2023**

**HON. JORGE ALONSO**
**United States District Judge**

24